Good morning, your honors. My name is John Ullman. I represent the appellate McRoberts and the appeal. The facts of this case are relatively unimportant to the discussion, but I'll give it to you briefly. Mr. McRoberts was involved in a motor vehicle accident with a driver who was underinsured. The underinsured policy, or excuse me, the at-fault driver's policy paid their policy limits, and then we made an underinsured claim against Mr. McRoberts' own policy. They tendered money, of which was not sufficient to pay all of the medical bills in this case, and we filed a petition to adjudicate the liens. The question before Judge Campanella was whether the Healthcare Services Lien Act applies to underinsured motorist coverage benefits from the plaintiff's own policy. Judge Campanella entered an order that said that they did, and we filed this appeal. The question then, which is one of first impression in this court and in the Healthcare Services Lien Act, applies to underinsured motorist benefits. Our argument is that it does not. The reason that it does not is that the dams construed the Lien Act so that it all makes sense and you can't end up with an absurd result. The Healthcare Services Lien Act requires the healthcare provider to file a notice, and in that notice he has to state certain things. One of the things that he has to identify is the at-fault party, and he has to serve that lien on the at-fault party. The reason for that is that the at-fault party or their insurance company, when they make payment, they're aware of the lien of the healthcare provider, and then they take steps to either say, well, we have to put the doctor's name on the check, or you've got to go to court and adjudicate the liens, and then the court will make a ruling and divide up, depending on who's paid what, and the percentages and all that, which is not an issue in this case. So we have the notice requirement. The notice requirement is that the at-fault party has to be notified. There's two parts to that. One is that they get notice. Number two is that any payments that the at-fault party makes to any of the lien holders, they get credit for. So that has an important part of this. So in this case, where the lien holders filed their lien, we have the money, that's all adjudicated. Then we have the underinsured money. Well, number one, the doctor, in this case and any other case, has no way of knowing who the underinsured motorist carrier is, and the underinsured motorist carrier has no way of knowing whether there's a lien, because they don't get notice. They are not the at-fault party. They're not paying on behalf of the at-fault party. They're not paying damages. It's a contractual claim between them and their insurer. How does this, how do you distinguish them from the MedPay provision in Progressive versus Taylor? I think MedPay is completely different. MedPay, and I'll say this, MedPay is a company that was designed to pay medical bills, and I thought that that case was wrongly decided. I thought that all of that money should go to the doctor. I don't think the lawyers should have been paid out of that, because that money was specifically designed to pay their medical bills. The other part of that, Your Honor, is that they were in a car that was paying the liability, they were all in one car that had a wreck, so the at-fault driver was the insurer, and so you had one policy that was paying the liability claim plus paying the MedPay. I thought it was wrongly decided. I thought it all should have went to the doctor. The MedPay should have all went to the doctor and nothing else, and that case, Judge, is different than what this court, the Fifth District, decided at Gaskill. In Gaskill, what happened is the doctor there charged his bill, and then he tried to charge interest on his bill, and that came before the court, and what this court said is that, it's a little bit different issue, but it comes down to what my argument is, we hold that the reasonable charge in the Physician's Lien Act are confined to charges relating to the injuries to the patient resulting from the conduct of a tortfeasor, from whom comes the recovery against which the doctor's lien is asserted, and so that's my argument, is that the Lien Act applies to claims against the tortfeasor, it applies to money paid on behalf of the tortfeasor, and that's it. It doesn't apply to these other, what I would call, third-party contractual agreements. If you take the defendant's position in this case, that it applies to every payment made in any way on this claim, then conceivably, if my person was injured and got Social Security Disability benefits because of this injury, would they want part of that? If they were receiving benefits from the Illinois Department of Public Aid, would they get benefits from that? If he had a claim with AFLAC to pay him disability pay while he was off work, would they get that? I don't think so. I don't think that... Excuse me. What about the language, though? Can you really stretch to Social Security and Medicaid when the Lien Act uses the words verdict, judgment, award, compromise, or settlement? I mean, but for the injury, you would agree that the underinsured would not kick in? I agree that, but for the injury, that underinsured motorist benefits would not kick in. And if your client was injured in multiple millions of dollars and the underinsured carrier refused to pay a limit of 50, would you be able to file a suit against the underinsured carrier? So you potentially have a lawsuit. Well, depending. There's two different... To answer your question in a roundabout way, depending on the insurance policy, that may be true. Some insurance policies require you to file a suit against them. Some don't. I'm not trying to parse your answer, but they're... Either way, you would agree that once the primary tort fees are 30, the person causing the injury is paid, limits their policy. Sure. If you're lucky enough to have an underinsured policy out there, they don't have to pay the full amount. It could give rise to litigation. That's correct. Thank you. So would you consider that a settlement? I think that whatever you were paid to make it easy for the court, I think anything you were paid from your underinsured would fall into one of those words that the Act uses, verdict, judgment, award, settlement, or compromise. I'm not here to say that this is a word that falls out, that whatever he's paid falls outside those words. I think those words apply to your claim against the at-fault party. And so... And I thought what the legislature's doing is you can come up with a lot of ways to say we're paying you money. We're paying you a verdict, a settlement, an agreement, a compromise. Whatever you want to call it, that's what I believe that that language applies to is the actions between the at-fault party and the plaintiff. And so if you're paid money, you pay their $50,000 policy limits, those words are so expansive that you couldn't get a payment that doesn't fall under one of those categories. But that doesn't make any sense, though, if you apply the notice requirements of the first part of the Act, and I think those are limited words that apply only to the at-fault party. That's my argument, in essence. And it makes sense that those third-party benefits that the plaintiff has paid for contractually are his separate and apart. But isn't MedPay a third-party benefit that's contractual as well? Depending on the circumstance, it can be. But the difference is that the MedPay coverage is designed solely to pay medical bills. If I'm hurt and I lose wages, if I have other damages, MedPay doesn't cover that. MedPay only pays for medical expenses. And to me, that's the difference. If I have a policy that says I have to pay medical bills for this amount of money, and I tender a claim against that amount of money, somebody would sue me if I didn't pay my medical bills. They'd say, geez, you committed fraud. These are intended to pay your medical bills, and you didn't do that. Underinsured motorist coverage is not intended solely to pay medical bills. It may not pay any of the medical bills. It may pay all of their lost wages. And just like in some of these other cases, the doctor's bill doesn't go away. If he's got a whatever, $10,000 bill, 20 whatever, if he's not paid in full, adjudicating his lien doesn't say he doesn't get paid. It just says he doesn't get paid from the settlement proceeds. And to me, that's the distinction. We're not adjudicating his right to file a contract action to say, you know what, I've provided you these services. You owe me the money. Okay, fine. And they can work out some arrangement on that. But when there's other considerations in underinsured motorist claims, and to give the doctor the money without any of these other considerations, when I believe that those are third-party contractual obligations, I think is inconsistent with the lien act. Did the legislature just fix that argument? I don't think so. If you tried a case for this injured person and the jury awarded medical pay of a million dollars, the discovery is done, do you think the underinsured would be subject to the lien then as we adjudicate all the money? I'm sorry, can you say that again? If a jury awarded a million dollars in this case for medical bills, you know the lines, do you think that then the doctors would have the right to give notice to you and the carrier to the underinsured? You know now that the million dollars is the money set for the medical. Well, they can't comply with the act, Judge, because say I'm the plaintiff. My insurance is between me and my insurance company. The notice says you have to give the notice requirements to the defendant. My insurance company may never know. It says that it should be served on both the injured party and the party against who the claim arrived at should exist. That's correct. Well, it would be served on the plaintiff then in this instance, and does not the plaintiff have an obligation to turn that over to their insurer contractually? I don't mean to interrupt, but that's why I was asking you before. Theoretically, you could have a claim against your underinsured carrier, and that seems to fit also within that definition, because the underinsured then becomes the party against whom the claim arrived at should exist. So it doesn't use the word tortfeasor is my confusion. I'm sorry, Judge, I didn't hear you. I'm sorry, it doesn't use the word tortfeasor per se. It just says a party against whom a claim could exist, and that's my confusion. The claim is always against the defendant, always against the defendant. I may have insurance that insures against the action of the defendant, but I could never sue my underinsured carrier directly for what that defendant did. There's a lot of steps that go in between that, and some of those are that they have to pay their policy limits. I have to obtain from my insurance company the right to pursue that so they can protect their subordination interest, and then that becomes my insurance policy between me and my company. I see that as a different issue than me suing the defendant directly. I have no direct claim against my insurance company until several things happen ahead of that, and they are never the at-fault party. They're never the one against whom the original claim is asserted, and the doctors could never directly in any way pursue my underinsured carrier for anything. Any other questions? Thank you. Good morning. Good morning. My name is John Daly. I'm here representing Southern Illinois Hospital Services. To address what Mr. Allman talked about in the notice provision, I think the statute actually does address that issue. When you first have the motor vehicle accident claim, it's true it's only against the tortfeasor at that point in time, and you don't even know that you have an uninsured motorist claim until you can figure out whether the tortfeasor has enough insurance to cover the medical bills, or once that occurs, then you can make a UIM claim or UM claim, whatever. So at that point, the right of payment from the UIM carrier doesn't exist, so there's no way that we could give notice to a UIM carrier, even if we knew they existed at that point, because they're not the party that owes anything then. Once the judgment is determined for the tortfeasor, then the plaintiff's attorney can go and collect on the UIM claim. Now, if the insurer with the UIM claim disagrees with it, then Mr. Allman has to go, or the plaintiff's attorney has to go through arbitration, which would then provide that, or the arbitration becomes an award, which fits within the statute. Under the Lean Act, I think it's Section 2315, covers whether we would find out about the UIM carrier. The 2315 provides a judgment award, sudden or compromised security buyer on behalf of an injured person may not be satisfied without the injured person or his or her authorized representative first giving notice to the people that have given the notice of the liens. So at that point, we would know that there is another person out there, a party out there, that owes money. So at that point, we could give notice to them if we had to. So I think the notice is kind of a red herring, because we don't know who it is unless they tell us, and then once they tell us, we can give them the lien notice that's required under the statute. Another thing with regard to the notice, it's not for the benefit of the injured party. The notice is to benefit the party that owes the money to the injured party, and it protects them from us going after them for paying out and ignoring our lien. So if they're given notice and they don't pay us, then they're going to be liable for our lien. If they're not given notice, then they have no liability if they, in good faith, pay the money to the injured party. So I think the notice provision is covered under the statute itself. In addressing what the Act applies to, I think Mr. Allman is trying to say that we can only get a lien between the tortfeasor and the injured party. The Act doesn't say that. It says any and all claims and causes of action that the injured party may have. Therefore, the UIN is a claim. It's a right of action against their own insurance company, and they're going to most likely take it to arbitration. In fact, this court even stated that you can't get a UIN claim unless you do arbitration. It was the Hale case. Yes, it says there is no way for an insured to make an underinsured motorist claim absent an arbitration proceeding. So it's going to fit within the settlement verdict award. It's also interesting to note that prior to 2003, the statute itself did not include award. That was added when the statute was redone and all the other liens were combined into this one health care services lien act. So when they added award, I think, in my opinion, they intended that to apply to any arbitration proceedings, which is what you would get when you have a UIN dispute. Addressing the MedPay, in my opinion, the MedPay is the exact same. It's a contractual obligation of the injured party's insurance company to make payments based on the contract. Now, in the Progressive case, they made the payments directly to the injured party. I'm not sure why Carl Clinic in that position was stating that they had a right to the entire thing and didn't have a lien, because I think they did have a lien, and I think the case was directly decided. It allows the health care provider to get paid their 40% from that amount, and it gives the insurer protection against the lien, and it also gives money to the injured party through that MedPay. So we simply add that MedPay, even if it's paid to the hospital directly. We add that to the settlement, and then we apply the 40% rule to that. So I think it's the exact same thing. You're paying it from the injured party's insurance company, and you're also paying the underinsured benefits from the injured party's insurance company. There's no difference, other than it states it's for medical. But if they make the payments to the plaintiff, and the plaintiff is aware of the lien because they give notice, or they're given notice, I think then they're covered. And they simply put the name of the hospital, or the doctor, and the name of the plaintiff, and then apply the act to them. Any questions? Thank you, sir. Thank you. Thank you. Your Honor, I would just briefly respond to Mr. Daley's argument that the lien act provides a way for the underinsured party to be notified. The plaintiff has to give notice to the people who validly filed the lien with the notice requirements. They have to give notice to those people. So the doctor, he has a lien against Joe Smith. When that case against Joe Smith settles, they get a notice. The act says that the notice shall be in writing to a certain kind of holder, in this case the lien holder, has to give notice to the people who validly filed the lien. When the lien notice says you have to identify the at-fault party, the underinsured party is not the at-fault party. They would never have notice of that, and they would not be required to give notice under this separate section of the act. Again, that's the problem, is there's so many difficulties in applying the act in the way that the defendants would argue that it works, that they can't apply it. Do you believe that physicians can have an equitable lien for services rendered? No. So can you know what we have by quantum merit? No. Provide a service? I think their lien is by statute, it's strictly construed, they have to comply with all the requirements, and that's how they're protected. Because the argument that I hear being made is that under the lien act, the plaintiff gets notice, but then there's a separate section, 770-ILCS-20.15, that basically says any judgment, award, settlement, or compromise secured by or on behalf of an injured person may not be satisfied without the injured person getting notice of the judgment, etc. To the health care professional or provider that rendered a service, it's a lien waiver. They don't have to be a lien waiver. And then later there's use of awarding, so it's confusing. Well, I wouldn't want to criticize the legislation, but this was a poorly drafted, poorly thought out, poorly written act. It has so many loopholes and problems that this is just one of them. As an example, it has nothing to do with this case, but let's say that I have health insurance, and my health insurance pays some of these bills. They want to be paid back, and we'll say there exists a funded plan. They say we want all of our money back. Well, there's some medical bills that aren't paid, but we have to adjudicate the bills. And there's 40%, and those doctors and hospitals want 40% of the settlement. They don't want 40% after you've paid back your health care. They want 40% of that settlement and then leave you to deal with your health care. You could end up in certain situations, which have not been addressed, where your 30% that you get after paying your attorney and the bills goes back to your health care here because they want all the money. That is not what was intended. It didn't take that into account. The same situation is what if somebody's on Medicaid or Medicare, and Social Security has paid their bills? Well, they have a super lien. They're going to get paid first above all else. They're going to get paid before the lawyer gets paid. They're going to get paid before anybody gets a penny. How do we deal with Social Security and those claims under the Lien Act because there's nothing that says anything about that? And, again, I think this is just the same problem. It doesn't address underinsured claims. If you try and say, okay, these words here mean something and over here they mean something different, you can end up with different results. I think that, obviously, I think my interpretation of the Act is consistent with all of these competing interests, and the doctor can always be paid. He always has a contractual right to collect his bill and to be paid for what he's done. Thank you.